**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PATRICIA CANESTRI, | ) |
| Plaintiff, | ) Civil Action No.: 07-1603 (JLL) |
| v. | ) |
|  | ) **OPINION** |
| NYSA-ILA PENSION TRUST FUND AND PLAN, | ) |
| Defendant. | ) |

**LINARES**, District Judge.

This matter comes before the Court on the motion for summary judgment filed by Defendant NYSA-ILA Pension Trust Fund and Plan (the "Trust Fund"). Plaintiff Patricia Canestri commenced this action asserting claims for breach of fiduciary duty (Count I), fraud and misrepresentation (Count II), mistake (Count III), undue influence (Count IV), lack of capacity (Count V), and breach of contract (Count VI).[1] Jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the

---

[1] Some of these claims are seeking relief for life insurance benefits and container royalty benefits. The Trust fund asserts that "[t]hese claims were brought against the wrong party," and that "Mrs. Canestri's attorney has informed co-counsel to the Trust Fund that Mrs. Canestri will be withdrawing these claims." (Corrected Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 7 n.2 [hereinafter "Def.'s Summ. J. Mem."].) Neither parties' briefs address these claims. Therefore, this Opinion accordingly does not address or cover any such claims.

Federal Rules of Civil Procedure. For the reasons set forth below, the Trust Funds's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The Trust Fund provides retirement income to longshore workers. (Def.'s Rule 56.1 Stmt. of Undisputed Mat'l Facts ¶ 1 [hereinafter "Def.'s Stmt. of Facts"].) Mrs. Canestri is the surviving spouse of Carlo Canestri, a former longshore worker and Trust Fund participant. (Id. at ¶¶ 2-3.) The Canestris completed an Application for Pension benefits on December 21, 2004, in person in the presence of a Trust Fund representative. (Id. at ¶¶ 4-5.) The application consisted of numerous pages, with several places for signature. Five forms are particularly relevant here.

The first is titled "Part III: Joint and Survivor Annuity Benefit." (Id. at ¶¶ 7-9 & Ex. B, PTF 0012.) (Id. at.) This form is signed by Mr. and Mrs. Canestri and the plan representative and states:

> The provisions of the NYSA-ILA Pension Trust Fund concerning the Joint and Survivor Annuity Benefit have been explained to us.
>
> We understand that if we choose the Joint and Survivor annuity Benefit, the Pension Benefit will be actuarially reduced. If the spouse should die before the Pension Applicant, the reduced amount will not be increased to the full Pension Benefit amount.
>
> We understand that if the Joint and Survivor Annuity benefit is chosen, upon the death of the Pensioner the benefit is payable for life even if the spouse remarries.
>
> We have been advised that if the J&S Annuity Benefit is not chosen, the spouse will not receive such benefit upon the death of the Pensioner.

(Id. at Ex. B, PTF 0012.)

The second is titled "Part IV." (Id. at Ex. B, PTF 0013.) This form states: "We have been given an explanation of the Joint and Survivor Annuity Benefit and the effect such election or

diselection will have on the pension benefit amount. We fully understand the explanation and make the following declaration." (Id.) After this language, there are five choices to chose from. (Id.) Option A is checked; this option states: "I DO NOT WANT to be covered by the Joint and Survivor Benefit." (Id.) This form is also signed by the Canestris and the plan representative. (Id.) However, Esperenza Tablan, the Trust Fund representative who assisted the Canestris, testified that when the Canestris signed the form at PTF 0013 there was no checkmark next to option A. (Dep. of Esperenza Tablan, at 30, 33-34.)

The third is titled "Part V: Calculation of Joint and Survivor Benefit." (Def.'s Stmt. of Facts, Ex. B PTF 0014.) This form shows the amount of pension before a reduction for the Joint and Survivor Annuity Benefit ("J&S Benefit"), and then the amount of the J&S Benefit and the amount of the benefit payable to the survivor at death. (Id.) This form is also signed by the Canestris and the plan representative. (Id.)

The fourth is titled "Joint and Survivor Annuity Benefit Waiver." (Id. at PTF 0024.) This form states:

> I, Patricia Canestri am the spouse of Carlo Canestri. I understand that my spouse has applied for retirement benefits from NYSA-ILA Pension Fund ("Pension Fund") in the form of a service Pension Benefit.
>
> I have been advised that I have the right to have the Pension Fund pay my spouse's pension benefits in the Qualified Joint and Survivor Annuity (QJSA) annuity benefit form and I agree to give up that right. I understand that by signing this agreement I may receive less money than I would have received under the QJSA payment form.
>
> I have been advised that I do not have to sign this waiver. I understand that if I do not sign this waiver, the Pension Fund will pay my spouse's pension benefit in the QJSA annuity benefit form which will result in a reduction in the amount of monthly pension benefit my spouse will receive.

>I am signing this waiver voluntarily.

(Id.)  This form is signed by Mrs. Canestri and the plan representative.  (Id.)

Finally, the fifth form, which is untitled, shows three calculation options: "regular pension," "calculation of J&S," and "calculation of ten year pension."  (Id. at PTF 0030.)  There is a check mark next to "regular pension."  (Id.)  This calculation does not show any reduction factor for the J&S Benefit.  (Id.)  With regard to this form, Ms. Tablan was asked at her deposition: "So by signing this they have elected that the wife is getting a pension, is that it?"  (Dep. of Esperenza Tablan, at 38:12-13; see also id. at 35:14-22.)  Ms. Tablan answered: "Yes."  (Id. at 38:14.)  Both Mr. and Mrs. Canestri signed this form.  (Def.'s Stmt. of Facts, Ex. B PTF 0030.)  Ms. Tablan also testified that she does not remember meeting with the Canestris.  (Dep. Of Esperenza Tablan, at 8-9, 30.)

Based on these forms, the Trust Fund considers the Canestris to have waived the J&S Benefit.  Therefore, Mr. Canestri received a greater pension payment while he was alive, but Mrs. Canestri received no benefits after his death, approximately sixteen months after execution of the pension application.  (See Def.'s Summ. J. Mem. at 5-6.)

Mrs. Canestri does not contest that her and her husband's signatures on the forms are genuine.  (Id. at ¶ 6.)  Rather, she argues that their signatures were not made knowingly and voluntarily.  She claims that prior to applying for his pension, Mr. Canestri was very ill and aware that he had a limited life expectancy.  (Plf.'s Rule 56.1 Stmt. of Undisputed Mat'l Facts, at ¶ 4 [hereinafter "Plf.'s Stmt. of Facts"].)  She states that on the day they completed the application that their son, Paul Canestri, went with them "because of the serious health issues his father had and also because his mother had a tendency to get confused and nervous."  (Id. at ¶ 5.)  She further

asserts that on that day, Mr. Canestri "was lightheaded, having trouble breathing, complained of nausea, and complained of dizziness[, and that] [h]is face was pale, he appeared to be very very tired, and he put his head down on the desk." (Id.) Mr. Canestri was also using a portable oxygen tank. (Id. at ¶ 6.) In addition to his physical symptoms, Mrs. Canestri asserts that Mr. Canestri told the Trust Fund representatives that he was not feeling well and needed insulin. (Id. at ¶ 5.) She asserts that no one asked them to read the forms they were signing and no one explained the forms to them. (Id. at ¶ 7.) She states that they did not read the documents. (Id.) She states that she asked questions of the Trust Fund representative, but that they were not answered–"she was just told to sign the papers and not to worry about it that everything was being taken care of." (Id.)

Mrs. Canestri additionally asserts that neither her nor Mr. Canestri were given copies of the documents. (Id. at ¶ 9.) She states that they were told that they would be mailed to them, but they were not; she only received copies after her attorney requested them eighteen months after Mr. Canestri passed away. (Id.) On the copy she received from the Trust Fund, option A, on the form titled Part IV, was checked.

## LEGAL STANDARDS

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." On a summary judgment motion, the moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of

material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## DISCUSSION

### A. Preemption

The Trust Fund argues that all of Mrs. Canestri's claims for survivor annuity benefits, however, asserted in the Complaint, are preempted by § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). Section 502(a)(1)(B) permits a plan beneficiary to bring a claim for benefits under an ERISA Plan. 29 U.S.C. § 1132(a)(1)(B). Additionally, claims for breach of fiduciary duty and other equitable relief may be brought under § 502(a)(3). 29 U.S.C. § 1132(a)(3); see also Varity Corp. v. Howe, 516 U.S. 489, 515 (1996); Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 461 (3d Cir. 2003). In her Complaint, Mrs. Canestri does not expressly bring her claims under ERISA. However, in her opposition to the Trust Fund's motion for summary judgment, she makes arguments pursuant to these ERISA provisions. Therefore, she does not appear to challenge the Trust Fund's assertion that, to the extent she is asserting state law claims for benefits under the ERISA plan, those claims are preempted. Rather, she argues that in addition to a claim for benefits "equitable defenses are available to a party to a suit brought under ERISA." (Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 5 [hereinafter "Opp'n Br."].)

"ERISA is a comprehensive statute for the regulation of employee benefit plans; it is intended to occupy fully the field of employee benefit plans." Hooven v. Exxon Mobil Corp., 465 F.3d 566, 573 (3d Cir. 2006) (internal citations and quotations omitted). Thus, "every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA." Id. If a plaintiff's claims, no matter how asserted in the complaint, "fall within the scope of ERISA's civil enforcement provisions, they are completely preempted." Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272 (3d Cir. 2001). Claims by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" fall within the civil enforcement provisions of ERISA. Id. at 271-72 (quoting 29 U.S.C. § 1132(a)(1)(B)). Mrs. Canestri's claims are clearly for survivor benefits she asserts are due her under Mr. Canestri's pension plan. Therefore, all of her claims for benefits are completely preempted by ERISA and must be analyzed within the ERISA framework to determine if relief is available.

     **B.**     **Claim for ERISA Benefits under § 1132(a)(1)(B)**

For purposes of this motion, the Trust Fund does not contest the facts as presented by Mrs. Canestri, it "will concede[] that neither [Mrs. Canestri] nor Mr. Canestri read the pages of the pension application before signing them, that the documents were not adequately explained to them, and that Mr. Canestri was not feeling well on the day that they completed the application." (Def.'s Summ. J. Mem. at 7.) The Trust Fund argues that any facts related to the events surrounding the completion of the forms are irrelevant because under the rules governing ERISA documents, a waiver will be enforced so long as the statutory requirements for the waiver are met.

The requirements for joint and survivor annuity benefits are set forth in 29 U.S.C. § 1055. Section 1055(c) (1) states:

> A plan meets the requirements of this section only if –
>   (A) under the plan, each participant--
>     (i) may elect at any time during the applicable election period to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both),
>     (ii) if the participant elects a waiver under clause (i), may elect the qualified optional survivor annuity at any time during the applicable election period, and
>     (iii) may revoke any such election at any time during the applicable election period, and
>   (B) the plan meets the requirements of paragraphs (2), (3), and (4).

29 U.S.C. § 1055(c). Section 1055(c)(2) provides that any election under § 1055(c)(1)(A)(i) is only effective if

> (A) (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public, . . .

Id. at § 1055(c)(2). Finally, § 1055(c)(6) provides that "[i]f a plan fiduciary acts in accordance with [the fiduciary requirements of ERISA] in . . . relying on a consent or revocation . . . then such consent, revocation, or determination shall be treated as valid for purposes of discharging the plan from liability to the extent of payments made pursuant to such Act." Id. at § 1055(c)(6). Thus, the Trust Fund argues that so long as a spouse's waiver conforms on its face to the requirements set forth in § 1055, the waiver will bar any claim for survivor annuity benefits under § 1132(a)(1). It argues that Mrs. Canestri's waiver conforms on its face to the statutory requirements, and is,

therefore, "unimpeachable." (Def.'s Summ. J. Mem. at 2.)

Recently, the Supreme Court held that a "plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA],'and the Act provides no exemption from this duty when it comes time to pay benefits." Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 129 S. Ct. 865, 875 (2009) (discussing a claim for benefits under § 1132(a)(1)(B)) (alteration in original, internal quotation and citation omitted). The Court further stated that "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule . . . ." Id. at 875. Another rule would mean that "[p]lan administrators would be . . . drawn into litigation . . . over the meaning and enforceability of purported waivers." Id. at 876. The Trust Fund cites to Kennedy to support its assertion that the waiver is unimpeachable. Additionally, in support of its position, the Trust Fund also cites Vilas v. Lyons, 702 F. Supp. 555 (D. Md. 1988). However, while that court held that a "the plan administrator may rely on a waiver that conforms on its face," it stated that such reliance was appropriate "[i]n the absence of *actual knowledge* of fraud or coercion in the inducement or *actual knowledge* of invalidity." Id. at 559 (emphasis in original). Unlike in Vilas, here, Mrs. Canestri does allege that the plan administrator breached its fiduciary duty, and as a result her waiver is not valid.

This Court agrees that the general rule is that a waiver speaks for itself and may not be challenged by later assertions that the waiver was not what a party intended or understood. But, §

1055(c)(6) also expressly makes clear that a waiver under that section will be valid so long as "a plan fiduciary acts in accordance with" his fiduciary duties. Therefore, this Court finds that a waiver is not unimpeachable regardless of the surrounding circumstances; such a finding would mean that a court would have to look past any conduct of a plan administrator, no matter how egregious, so long as the administrator was able to get a waiver signed.

"[A] fiduciary has a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Horvath, 333 F.3d at 461. Thus, the fiduciary duty under ERISA "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) (holding that where a participant has requested information and the fiduciary understands her situation, the fiduciary has must accurately provide all relevant information).

The question, therefore, is whether the facts read in a light most favorable to Mrs. Canestri create a genuine issue of fact as to whether the Trust Fund breached its fiduciary duty, thereby invalidating the waiver under § 1055(c)(6). This Court finds that they do. The facts do not indicate merely that Mrs. Canestri did not read the forms or simply that the plan representative did not explain the forms to them. This Court agrees with the Trust Fund that such facts standing alone would be insufficient to challenge the waiver. However, here, there are two forms that explicitly address the waiver–one form indicates waiver and is signed by Mrs. Canestri and one form has options to check, one of which is the waiver, which the plan representative testified was

signed without an option being checked.  Additionally, the plan representative testified that other notations on forms indicated that the Canestri's were electing for Mrs. Canestri to get a pension.  Thus, at best, the documents are inconsistent and do not express a clear waiver.  Reading the facts in the light most favorable to Mrs. Canestri a reasonable inference is that she thought that she was electing to receive the survivor benefits, as indicated in Ms. Tablan's deposition, and that she relied on the plan representative when she was told to just sign and that everything was being taken of.   Thus, at worst, a factfinder could infer that the plan representative failed to disclose material facts by being aware of Mr. Canestri's ill health, understanding that Mrs. Canestri thought that she was electing to get the survivor annuity benefits, and yet refusing to answer questions so that Mrs. Canestri would continue with that belief and erroneously sign the one waiver form in the stack of forms not understanding what it meant.  This conclusion could be further supported by the fact that the only form with all of the options clearly indicated was signed by the Canestris without the waiver option being checked off; the check mark indicating that the waiver option was selected was allegedly added by someone between the time the Canestris signed the form and the time the forms were eventually mailed to Mrs. Canestri after Mr. Canestri's death.

     Under such a scenario, a factfinder could find that the plan representative breached its fiduciary duty by knowing that a waiver of the survivor benefits would only be beneficial if Mr. Canestri was expected to live many more years, which he was not, but failing to disclose this information despite evidence that Mrs. Canestri misunderstand the forms she was signing.  Therefore, this Court finds that there is a genuine issue of fact whether the Trust Fund breached its fiduciary duty to the Canestris in completing the pension application.  Therefore, the Trust Fund's

motion for summary judgment on Mrs. Canestri's claim for benefits under § 1132(a)(1) is denied.

### C. Breach of Fiduciary Duty Under § 1132 (a)(3) & Other Equitable Claims

Mrs. Canestri's independent claim for breach of fiduciary duty and other claims for equitable relief are all based on the same facts and are all in essence a claim for benefits she asserts are due under the pension plan. Claims for breach of fiduciary duty may be brought under § 1132(a)(3). See, e.g., Varity Corp., 516 U.S. at 515; Bixler, 12 F.3d at 1298. However, in Varity Corp., the Supreme Court explained that "where Congress elsewhere provided adequate relief for an [ERISA] beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515. Thus, generally where relief is available under § 1132(a)(1)(B), relief under § 1132(a)(3) is not appropriate.

At this stage of the proceeding, this Court finds it premature to dismiss Mrs. Canestri's breach of fiduciary duty claim under § 1132(a)(3). See Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001) (permitting claims under both 1132(a)(1) and (a)(3) to proceed, reasoning that "should plaintiffs' claim under . . . 29 U.S.C. § 1132(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy). However, to the extent that Mrs. Canestri asserts other equitable claims under § 1132(a)(3), this Court finds such claims inappropriate as amply covered by her claim for benefits under § 1132(a)(1)(B) or her claim for breach of fiduciary duty under § 1132(a)(3). Therefore, this Court will deny summary judgment with respect to a claim for breach of fiduciary duty under § 1132(a)(3), but grants summary judgment with respect to the other equitable claims asserted by Mrs. Canestri.

## CONCLUSION

For the foregoing reasons, this Court denies the Trust Fund's motion for summary judgment for Mrs. Canestri's claim for benefits pursuant to § 1132(a)(1) and claim for breach of fiduciary duty pursuant to § 1132 (a)(3) and grants its motion for summary judgment with respect to any other claims for equitable relief pursuant to § 1132(a)(3). An appropriate Order accompanies this Opinion.

DATED: March 23, 2009          /s/ Jose L. Linares
                               JOSE L. LINARES
                               UNITED STATES DISTRICT JUDGE