**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA CANESTRI,<br><br>                    Plaintiff,<br><br>v.<br><br>NYSA-ILA PENSION TRUST FUND AND PLAN,<br><br>                    Defendant. | Civil Action No.: 07-1603 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This case involves a dispute about the application submitted by Plaintiff Patricia Canestri's deceased husband, Carlo Canestri, for a pension managed by Defendant NYSA-ILA Pension Trust Fund and Plan (the "Trust Fund") and the waiver of benefits allegedly made by her and her husband. There have been two prior opinions in this case: (1) this Court's March 24, 2009 Opinion, denying Defendant's motion for summary judgment on Plaintiff's claim for benefits and claim of breach of fiduciary duty and granting Defendant's motion with respect to all other claims, Canestri v. NYSA-ILA Pension Trust Fund and Plan, 2009 WL 799216 (D.N.J. Mar. 24, 2009) (CM/ECF No. 40); and (2) this Court's November 5, 2009 Opinion, granting Defendant's motion to strike Plaintiff's jury demand, Canestri v. NYSA-ILA Pension Trust Fund and Plan, 2009 WL 3698111 (D.N.J. Nov. 5, 2009) (CM/ECF No. 63). Having conducted a two-day bench trial on June 7 and June 9, 2010, the Court now enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## I.    EVIDENTIARY RULINGS

Prior to the trial, Defendant filed a motion in limine to preclude the testimony of nineteen of Plaintiff's witnesses on the ground that the expected testimony would consist of inadmissable hearsay or would be irrelevant.  In pre-trial argument, the Court agreed with Defendant with respect to the majority of the proposed witnesses, holding that the testimony would either be inadmissible, irrelevant, or cumulative.  The Court reserved with respect to certain witnesses who accompanied the Canestris to Defendant's office on the day the pension application was completed.  Plaintiff chose to call these two witnesses–Linda Consalvo and Angelo Falcone–in her case in chief.  These witnesses testified that, on the way to the pension office, Mr. Canestri expressed his intention of completing the pension application so that Plaintiff would receive a survivor benefit after he passed away.  They also testified that Mr. Canestri said that he did not expect to live much longer.

Plaintiff argues that this testimony is admissible under Rule 803(3) of the Federal Rules of Evidence.  Rule 803(3) provides an exception to the hearsay rule for "statement[s] of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)."  Fed. R. Evid. 803(3).  Courts have held that "three requirements must be satisfied for a statement to be admissible under [this] . . . exception to the hearsay rule: the statement must be contemporaneous with the mental state sought to be shown; there must be no circumstances suggesting a motive for the declarant to misrepresent her thoughts; and the declarant's state of mind must be relevant to an issue in the case."  Philips v. Potter, No. 07-815, 2009 WL 3271238, at *3 (W.D. Pa. Oct. 9, 2009). Defendant argues that the statements at issue are being offered to prove the behavior of its

employees, and that such a use is impermissible.  This Court agrees that such a use is

impermissible, but disagrees that this is the purpose for which the testimony was offered.  The

testimony was offered to demonstrate Mr. Canestri's belief, whether true or not, regarding the

state of his health.  It was also offered to demonstrate his intention that the pension application be

completed so that Mrs. Canestri would receive a survivor benefit.   The statements at issue

occurred on the way to the pension office.  The Court finds them to be sufficiently

contemporaneous under the circumstances.  Also, no evidence has been submitted suggesting

that Mr. Canestri had any motive to misrepresent his thoughts on the way to complete the

application.  Therefore, the Court has considered them for the purposes identified above where

relevant.  Defendant's motion in limine regarding the nineteen witnesses is granted in part and

denied in part.

Next, at trial, Plaintiff sought to introduce the deposition testimony of Fe Esperanza

Tablan into evidence.  Defendant objected.  This Court ordered that Defendant submit, as part of

the post-trial submissions, specific objections to the deposition testimony offered.  Defendant did

not do so.  Rather, it again objected to the admission of the deposition testimony in its entirety.

Ms. Tablan testified at trial; she was called as a witness by both parties and was subject to cross

examination.  She was asked about her deposition testimony.  Plaintiff has not demonstrated

what the admission of the deposition testimony adds to what was addressed in her live testimony.

Therefore, the Court finds that such evidence is merely cumulative of her trial testimony and

denies Plaintiff's motion to admit it into evidence.

## II.    FINDINGS OF FACT

At trial, the Court heard the testimony of Paul Canestri, Fe Esperanza Tablan, Patricia

Canestri, Linda Consalvo, Angelo Falcone, and Charles Ward.  The Court has considered the testimony of these witnesses as well as the documentary evidence presented at trial and finds that:

1. Having observed the manner and demeanor of each witness, the Court finds all of the witnesses to be generally credible.  However, considering all of the testimony in light of the documentary evidence, for dispositive questions of fact where there was conflicting testimony, especially between Paul Canestri and Ms. Tablan, the Court finds that the testimony of Paul Canestri was more credible.  Paul Canestri's testimony was consistent with the documents presented and with the other witness testimony regarding what Mr. Canestri intended to achieve in completing the pension application

2. Defendant is a multi-employer employee pension benefit plan under § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and § 3(2)(A) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(2)(A), that was established and is maintained by New York Shipping Association, Inc. (NYSA), which is an association of employers that employ longshore workers in the Port of New York and New Jersey in connection with the loading and unloading of vessels in international commerce, and the International Longshoremen's Association, AFL-CIO (ILA), which is an employee organization that represents longshore workers employed by the members of NYSA.  (Stipulated Facts ¶ 1, CM/ECF No. 97.)

3. A Joint and Survivor Annuity Benefit under the Trust Fund's plan consists of an actuarially reduced monthly pension benefit paid to the participant for the remainder of the participant's life, and, upon the death of the participant, a monthly pension benefit is paid to the participant's surviving spouse for the remainder of the spouse's life in an amount that is one-half of the amount of the reduced monthly pension benefit that was paid to the participant.  (Stipulated Facts ¶ 37.)

4. A participant can waive the Joint and Survivor Annuity Benefit provided that the participant's spouse consents to the waiver.  If the Joint and Survivor Annuity Benefit is waived, the participant receives the full unreduced monthly pension benefit for the remainder of the participant's life, and the participant's spouse does not receive any share of that monthly benefit upon the participant's death. (Stipulated Facts ¶¶ 38, 39.)

5. Plaintiff Patricia Canestri is the surviving spouse of Carlo Canestri.  Carlo Canestri is a former longshore worker and participant in the Trust Fund's plan.

(Stipulated Facts ¶ 2.)

6.      Between the early part of 2000 and December 21, 2004, Carlo Canestri had been hospitalized fourteen times for problems with his lungs, heart, hearing loss, vision loss, diabetes, asthma, sleep apnea, sinusitis, deviated septum, vascular disease, colitis, neuropathy, and spondylolisthesis of his low back.  He had diabetes for 17 years and used an oxygen tank for two to three years before he died.  He had problems with his memory, concentration, and was frequently confused.  He had difficulty making decisions and handling his own financial affairs.  (Stipulated Facts ¶ 4.)

7.      On December 21, 2004, Carlo and Patricia Canestri ("the Canestris") traveled to the Trust Fund's offices in New York City to complete Carlo Canestri's pension application. (Stipulated Facts ¶ 8.)  Their son, Paul Canestri, and his friends, Angelo Falcone and Linda Consalvo, accompanied them.  (Id. at ¶ 10; Trial Tr. 39:10-19.)

8.      Mr. Canestri brought his oxygen tank to the Trust Fund's offices on December 21, 2004.  (Stipulated Facts ¶ 15.)

9.      Ms. Tablan is an employee of the Trust Fund.  (Stipulated Facts ¶ 19.)  Ms. Tablan's general job duties include providing to a participant and the participant's spouse an explanation of the pages of the pension application.  (Id. at ¶ 22.)

10.     On December 21, 2004, Carlo and Patricia Canestri met separately with Ms. Tablan to complete the pension documents.  (Stipulated Facts ¶ 21; Trial Tr. 45:13-46:14.)  Paul Canestri was present with either Carlo or Patricia Canestri during the majority of the time they were completing their forms, and all forms were signed in his presence.  (Trial Tr. 44:16-45:12.)  Ms. Tablan is the only employee or representative of the Trust Fund who assisted the Canestris in the preparation of the pension application.  (Stipulated Facts ¶ 21.)

11.     Ms. Tablan has no recollection of having met with the Canestris on December 21, 2004.  (Trial Tr. 109:19-24.)  Her deposition testimony in the case was based on what she *normally* does in assisting applicants in completing pension applications.  (Id. at 109:25-110:3.)

12.     At the time of the meeting, Carlo Canestri was eligible for a pension calculated based on 49 years of service.  However, the administrator may input a higher number of years of service if it expects that a participant will make the higher level before retirement.  (Id. at 345:8-21.)  When an applicant says he will complete the additional hours, it was not unusual to print out documents showing calculations for the benefits based on the actual as well as expected years of

service.  (Id. at 346:18-347:4.)  Where pension documents have been prepared based on future additional service time, before paying out the benefits, the administrator must verify that the anticipated years of service were reached prior to retirement.  (Id. at 345:23-346:1.)

13.     Mr. Canestri did not need additional work hours to vest in his pension.  (See Trial Tr. 294:21-23.)  He only needed the extra hours to reach 50 years of service and earn a higher pension.  (Id. at 293:16-22.)  He worked a considerable number of hours between completion of the application and his retirement.  (Id. at 292:23-25.)  He chose to work the additional hours even though he was in poor health and even though he did not expect to live much longer.

14.     During the meeting with Ms. Tablan, the Canestris signed two sets of pension application documents.  (Trial Tr. 57:2-20.)  The Court refers to these sets of documents as the "original" and "second" sets of documents.  The second set of documents was not a new complete pension application.  Rather, it included certain forms which were to replace forms completed as part of the original set.  Ms Tablan said that certain forms in the original set were signed in the wrong spot.  (Id. at 57:15-16.)

15.     After the Canestris signed the original set of pension application documents, Carlo Canestri asked Ms. Tablan what amount he would receive in his monthly pension check and what amount his wife, Patricia, would receive as a Joint and Survivor Annuity Benefit after his death.  (Trial Tr. 56:9-20.)  Ms. Tablan replied that Carlo Canestri would receive approximately $6,000 per month before taxes, for a net payment of $5,000 per month, and Patricia Canestri would receive approximately $2,000 per month in Joint and Survivor Annuity Benefits after Mr. Canestri's death.  (Id. at 59:1-14.)

16.     After Ms. Tablan discussed the pension and Joint and Survivor Annuity Benefits with the Canestris, Ms. Tablan left the room to make copies of the original forms.  When she returned, Ms. Tablan told the Canestris that an error had occurred and that the documents needed to be reprinted and re-signed.  (Trial Tr.  59:15-20.)  By this time, the Canestris had been at the Trust Fund offices for almost two hours.  (Id. at 42:11-12.)  Carlo Canestri was complaining and was visibly not feeling well.  His oxygen tank had run out; this fact was discussed in front of Ms. Tablan.  (Id. at 66:7-25.)

17.     The second, reprinted set of pension forms were blank when Ms. Tablan gave them to the Canestris.  (Trial Tr. 59:21-60:4.)  In order to save time because of Mr. Canestri's condition and the length of time they had already been at the Trust Fund office, Ms. Tablan told the Canestris simply to sign the documents and that

she would complete them later.  (<u>Id.</u> at 61:4-61:13.)  She made tick marks[1] on the second set of forms indicating where the Canestris should sign.  (<u>Id.</u> at 60:8-61:13.)  The Canestris signed the second set of documents while they were blank, signing next to the tick marks made by Ms. Tablan.  (<u>Id.</u> at 59:21-61:13.)  Ms. Tablan told the Canestris that she would mail them a copy of the documents after they were completed.  (<u>Id.</u> at 61:10-11.)

18.   The original set of documents, completed in full by the Canestris, contained no tick marks next to the lines on which the Canestris signed.  (Trial Tr. 60:11-61:2.)

19.   The Canestris signed all relevant pages of both sets of pension forms in the presence of Ms. Tablan.  (Stipulated Facts ¶ 28.)  The signatures of Carlo and Patricia Canestri on the pension application are genuine.  (<u>Id.</u> at ¶ 52.)

20.   Carlo Canestri received his first monthly pension benefit payment on or about February 1, 2005.  (Stipulated Facts ¶ 57.)  He received the same monthly benefit payment each month until his death in June 2006.  (<u>Id.</u> at ¶ 58.)  The amount he received was based on the Joint and Survivor Annuity being waived.  Carlo Canestri received $792 more per month than he would have absent such a waiver. (<u>Id.</u> at ¶ 62.)

21.   Carlo Canestri never informed the Trust Fund that the pension payments he received while living were incorrect.  (Stipulated Facts ¶ 61.)

22.   The Set of Pension Documents Submitted by Defendant

   a.   Defendant's pension application file for Mr. Canestri contains only one set of documents; no duplicate pages are included.  (<u>See</u> Trial Ex. D-1.)

   b.   The set of pension documents submitted by Defendant as Exhibit D-1 includes, but is not limited to, the following:

      i.   PTF 0012, "Part III, Joint and Survivor Annuity Benefit," a form to be signed by both participant and spouse acknowledging that they understand the effect of electing or not electing the Joint and Survivor Annuity Benefit;

      ii.   PTF 0013, "Part IV," a form to be signed by both participant and

---

[1]The Court distinguishes a "tick mark" from a "check mark."  "Tick mark" refers to the slash-shaped symbols that appear next to numerous signature lines in Exhibit D-1.  "Check mark" refers to the roughly "v"-shaped symbol commonly used to select items within textual lists.

spouse electing or not electing the Joint and Survivor Annuity Benefit;

iii.   PTF 0014, "Part V, Calculation of Joint and Survivor Benefit," a form to be signed by both participant and spouse memorializing the calculation of the Joint and Survivor Annuity Benefit;

iv.   PTF 0024, "Joint and Survivor Annuity Benefit Waiver," a form to be signed only by pensioner's spouse waiving his or her right to the Joint and Survivor Annuity Benefit; and

v.   PTF 0030, a benefits calculation worksheet, a form to be signed by both participant and spouse detailing, inter alia, benefit calculations based on (1) a "Regular Pension," an award of benefits which excludes the Joint and Survivor Annuity Benefit, and (2) a "Calculation of J&S," an award of benefits which includes the Joint and Survivor Annuity Benefit.

c.   PTF 0012, the form entitled "Part III, Joint and Survivor Annuity Benefit," contains tick marks next to the Canestri's signatures.  (Trial Ex. D-1.)  The Court, therefore, finds that PTF 0012 was signed as part of the second set of documents.

d.   PTF 0013, the form entitled "Part IV," contains tick marks next to the Canestris' signatures.  (Trial Ex. D-1.)  The Court, therefore, finds that PTF 0013 was signed as part of the second set of documents.

e.   PTF 0013 contains a check mark next to the selection "I DO NOT WANT to be covered by the Joint and Survivor Annuity Benefit."  (Trial Ex. D-1.) That check mark was not present when the Canestris signed the form. (Trial Tr. 62:8-21.)  The Court finds that PTF 0013 was signed by the Canestris while blank and completed by Ms. Tablan after the Canestris left the Trust Fund's office.  No other version of PTF 0013 was presented to the Court.

f.   PTF 0014, the "Calculation of Joint and Survivor Benefit," contains no tick marks next to the Canestris' signatures.  (Trial Ex. D-1.)  The Court, therefore, finds that PTF 0014 was completed and signed as part of the original set of documents.

g.   PTF 0014 indicates that any Joint and Survivor Annuity Benefit would be $2,551.92 per month, an amount calculated on 49 years of service.  (Trial Ex. D-1; Trial Ex. P-2.)

h.   PTF 0024, the "Joint and Survivor Annuity Benefit Waiver," contains tick marks next to Plaintiff's signature.  (Trial Ex. D-1.)  The Court, therefore, finds that PTF 0024 was signed as part of the second set of documents.

i.   PTF 0024, the "Joint and Survivor Annuity Benefit Waiver," was blank when signed by Plaintiff.  (Trial Tr. 64:12-19.)

j.   PTF 0030, a benefits calculation worksheet, contains tick marks next to the Canestris' signatures.  (Trial Ex. D-1.)  The tick mark on this page is different than the tick marks on most forms in the second set.  PTF 0030 has a check mark next to the "Regular Pension" calculation; there is no marking next to the "Calculation of J&S" entry.  However, this form does not govern elections.  (See Trial Tr. 337:20-338:5.)  PTF 0030 further indicates that if the Canestris were to elect the Joint and Survivor Annuity Benefit, Plaintiff would receive $2604.00 per month.  This amount is based on 50 years of service.  (Trial Ex. D-1.)  The second set of documents were based on 50 years of service.  The Court finds that PTF 0030 was signed as part of the second set of documents.

k.   Because PTF 0014 contains calculations based on 49 years of service and PTF 0030 contains calculations based on 50 years of service, they are inconsistent.

l.   Charles Ward, the Executive Director of the Trust Fund, testified that documents PTF 0014 and PTF 0030 are inconsistent.  (Trial Tr. 332:7-9.)  He testified that, in the event of such an inconsistency, he had a professional duty to notify the applicant and attempt to resolve the inconsistency.  (Id. at 332:2-6.)  Mr. Ward testified that he never attempted to contact the Canestris subsequent to the December 21, 2004 meeting.  (Id. at 332:10-12.)  He further testified that he had no knowledge of anyone else at the Trust fund ever contacting the Canestris after the December 21, 2004 meeting.  (Id. at 332:13-16.)  Mr. Ward did not meet with the Canestris on December 21, 2004.  (Stipulated Facts ¶ 35.)

m.   Exhibit P-2, a benefits calculation worksheet, was produced by Plaintiff at trial.  It was not part of the set of pension application documents submitted by the Trust Fund.

n.   Exhibit P-2, a version of PTF 0030, indicates that Plaintiff would receive a monthly benefit of $2,551.92 after her husbands's death were she and her husband to elect the Joint and Survivor Annuity Benefit.  This value is consistent with the value found in PTF 0014, the "Calculation of Joint and

Survivor Benefit." (Trial Ex. D-1.) In other words, the benefits listed in Exhibit P-2 were calculated based on 49 years of service, like those in PTF 0014. (Trial Ex. P-2.)

o.    Exhibit P-2 contains markings next to the Canestris' signatures. They are different from the tick marks found throughout Exhibit D-1. Exhibit P-2 also contains check marks next to both "Regular Pension" and "Calculation of J&S." (Trial Ex. P-2.) Given the numerical consistency with PTF 0014 and the fact that PTF 0030 is inconsistent with PTF 0014 and has been found to be from the second set of forms, the Court finds that the calculations on Exhibit P-2 represent the original version of PTF 0030. Thus, the Court accepts Exhibit P-2 as evidence, but only for the purpose of supporting a finding that there were two sets of documents. The Court does not give weight to the check marks next to the pension options.

p.    In summary, the Court finds that PTF 0014 and Exhibit P-2 were part of the original set of documents. It finds that PTF 0012, PTF 0013, PTF 0024, and PTF 0030 were part of the second set of documents.

q.    Based on the testimony and other evidence detailed above, the Court finds that the original set of documents was created based on 49 years of service. The Court further finds that Mr. Canestri had expressed his intention to work additional hours so that he would have 50 years of service when he retired. When Ms. Tablan went to make copies of the original set of documents, completed by the Canestris, she realized that there was an error in the forms. She then presented the Canestris with a second set of certain forms, recalculated based on 50 years of service. But, because of Mr. Canestri's condition, rather than have the Canestris complete the replacement forms, Ms. Tablan told them to sign the forms while they were blank and told them that she would complete them after they left. She told the Canestris that she would mail them a completed copy of the forms. The Court further finds that Ms. Tablan completed the forms after the Canestri's left and replaced them in the pension application. Therefore, the Court finds that the pension application document packet submitted by Defendant represents an amalgam of forms from the original and second sets. Plaintiff did not receive a copy of the final pension forms until after Mr. Canestri's death. (Trial Tr. 147:8-148:10.)

## II.    CONCLUSIONS OF LAW

Plaintiff's remaining claims in this case, which were the subject of the bench trial, are a

claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and a claim of breach of fiduciary duty under

§ 1132(a)(3).   At the center of the dispute is a purported waiver of Joint and Survivor Annuity

pension benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

Under ERISA, a pension plan administrator is "obliged to act in accordance with the documents

and instruments governing the plan insofar as such documents and instruments are consistent

with the provisions of [Title I] and [Title IV] of [ERISA]." Kennedy v. Plan Adm'r for DuPont

Sav. & Inv. Plan, 129 S. Ct. 865, 875 (2009) (alteration in original, internal quotation omitted).

"[B]y giving a plan participant a clear set of instructions for making his own instructions clear,

ERISA forecloses any justification for enquiries into nice expressions of intent." Id.  In other

words, generally, in analyzing a claim for benefits 29 U.S.C. § 1132 (a)(1)(B), a court may not

inquire into a party's intent in executing the plan documents.  Id.  The Supreme Court has stated

that the costs of a less certain rule would be high because "[p]lan administrators would be . . .

drawn into litigation . . . over the meaning and enforceability of purported waivers." Id. at 876.

Based on this rule, if a waiver of joint and survivor annuity benefits facially conforms to

the requirements set forth in 29 U.S.C. § 1055(c)(2), it is generally unimpeachable.  In denying

Defendant's previous motion for summary judgment with respect to Plaintiff's breach of

fiduciary duty claims, this Court agreed with the general rule "that a waiver speaks for itself and

may not be challenged by later assertions that the waiver was not what a party intended or

understood," but noted that § 1055(c)(6) "expressly makes clear that a waiver under that section

will be valid only so long as 'a plan fiduciary acts in accordance with' his fiduciary duties."

2009 WL 799216 at *5.  Thus, this Court held "that a waiver is not unimpeachable regardless of

the surrounding circumstances." Id.  Without reference to the intention of the plan participant, a

facially valid waiver of joint and survivor annuity benefits may nonetheless be rendered invalid

where other evidence regarding a plan's actions demonstrates a breach of fiduciary duty on the part of the ERISA plan.  Because of this, Plaintiff's § 1132(a)(1)(B) claim for benefits hinges upon a finding of breach of fiduciary duty in the execution of the Joint and Survivor Annuity waiver.

### A.        Breach of Fiduciary Duty

ERISA requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  This duty does not require an oral explanation of the effect of waiver of Joint and Survivor Annuity Benefits.  See Kennedy, 129 S. Ct. at 875; 29 U.S.C. § 1055(c)(2) (indicating that a plan representative need not be present when the election is made because the election may be witnessed by a notary).  But, "a fiduciary has a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection."  Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 461 (3d Cir. 2003).  Additionally, the duty to inform also "entails . . . a negative duty not to misinform."  Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993).  Thus, to prove breach of fiduciary duty under ERISA, a plaintiff must demonstrate that: "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure."  In re Unisys

Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009) (internal quotations omitted).

      With respect to the first element, Defendant does not contest that Charles Ward, as Executive Director of the Trust Fund, acted in a fiduciary capacity with respect to Plaintiff. Defendant does, however, argue that "Ms. Tablan is not a fiduciary under ERISA" because "the explanation of plan benefits is a ministerial function, not a fiduciary function."  (Def.'s Proposed Conclusions of Law ¶¶ 9-10, CM/ECF No. 97.)  Defendant cites only to the questions and answers in the Code of Federal Regulations for this proposition.   In the "Questions and answers relating to fiduciary responsibility under the Employee Retirement Income Security Act of 1974," an answer to a question states that "a person who performs purely ministerial functions such as the type [described in the question] . . . is not a fiduciary."  29 C.F.R. § 2509.75-8 (Q&A D-2). The question lists the following types of activities:

(1) Application of rules determining eligibility for participation or benefits;
(2) Calculation of services and compensation credits for benefits;
(3) Preparation of employee communications material;
(4) Maintenance of participants' service and employment records;
(5) Preparation of reports required by government agencies;
(6) Calculation of benefits;
(7) Orientation of new participants and advising participants of their rights and options under the plan;
(8) Collection of contributions and application of contributions as provided in the plan;
(9) Preparation of reports concerning participants' benefits;
(10) Processing of claims; and
(11) Making recommendations to others for decisions with respect to plan administration.

Id.  Contrary to Defendant's assertions, explaining a plan's benefits to a plan participant, including answering specific participant questions, is not included in this list.

"ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) (emphasis in original).  "A fiduciary includes any person who 'exercises any discretionary authority or discretionary control respecting management of such plan' and any person who 'has any discretionary authority or discretionary responsibility in the administration of such plan.'" Adams v. Freedom Forge Corp., 204 F.3d 475, 492 n.17 (3d Cir. 2000) (citing 29 U.S.C. § 1002(21)(A)); see also Varity Corp v. Howe, 516 U.S. 489, 527 (1996).  The Third Circuit has held that "[a] plan administrator . . . acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees."  Adams, 204 F.3d at 492.

Defendant has stipulated that Ms. Tablan's "job duties included providing to a participant and the participant's spouse an explanation of the pages of the pension application."  (Stipulated Facts ¶ 22.)  Testimony also shows that Ms. Tablan was asked specific questions by Mr. Canestri regarding the amount of pension benefits to him and the survivor benefits to Mrs. Canestri, and that Ms. Tablan gave him the amounts.  Testimony also demonstrates that, on December 21, 2004, Ms. Tablan instructed the Canestris to sign certain pension forms while they were blank.  Most importantly, Ms. Tablan instructed the Canestris to sign form PTF 0013, the form governing the election or waiver of survivor benefits, while blank; it was not completed by the Canestris.  These actions by Ms. Tablan went beyond purely "ministerial" functions.  Defendant has not cited any case supporting a proposition that the activities engaged in by Ms. Tablan, as an agent of Defendant, do not trigger a fiduciary duty.  On the contrary, case law makes clear that a plan administrator has a duty not to misinform participants and that the explanation of benefits by a plan administrator is a fiduciary action.  This duty would be a fiction if high level plan

administrators could simply delegate fiduciary functions to lower level employees and escape any fiduciary duty to plan participants. Therefore, the Court finds that Ms. Tablan acted in a fiduciary capacity on behalf of the Trust Fund when she assisted the Canestris in the preparation of Mr. Canestri's pension application, including the waiver of survivor benefits by the Canestris.

Additionally, the fiduciary duties of the Trust Fund did not cease after Carlo Canestri's pension application was completed with the assistance of Ms. Tablan. As a result of the Canestris signing two separate sets of forms based on different years of service, the application as filed, which was an amalgam of both sets, was internally inconsistent. Mr. Ward, the Executive Director of the Trust Fund, acknowledged that the plan documents relied on by Defendant are inconsistent. He testified that, in the event of such inconsistency, he was under a duty to notify the applicant to attempt to resolve the inconsistency. Neither Mr. Ward nor anyone else at the Trust Fund notified the Canestris of the inconsistency.

In analyzing whether a breach of duty occurred, courts have found it useful to analyze the second element, a misrepresentation or inadequate disclosure, together with the third element, which requires that the misrepresentation or omission be material. See In re Unisys, 579 F.3d at 228. "A misleading statement or omission by a fiduciary is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision or a harmful decision regarding benefits." Id. (internal quotations and internal citations omitted). Under this standard, a plaintiff need not show that a fiduciary "had actual knowledge that a particular employee was about to be misled" in order to satisfy this element. Id. Instead, a plaintiff need only show that the fiduciary "knew or should have known

that a beneficiary would be confused" by the misrepresentation or omission.  Id.[2]   While proof of

actual knowledge is not necessary, Defendant acknowledges that this element would be satisfied

by proof of a plan administrator's "actual knowledge of [the] invalidity" of a participant's

pension plan documents, including a waiver of Joint and Survivor Annuity Benefits.  (See Def.'s

Proposed Conclusions of Law ¶ 4 (citing Vilas v. Lyons, 702 F. Supp. 555, 559 (D. Md. 1988)).)

　　　Here, after the Canestris signed the original set of pension documents, Ms. Tablan left the

room to make copies.  When Ms. Tablan returned, she told the Canestris that an error had

occurred and that certain of the forms needed to be reprinted and re-signed.  The second,

reprinted set of forms was blank.  Seeing the poor condition that Carlo Canestri was in, Ms.

Tablan instructed the Canestris to sign the blank forms next to tick marks she had made

alongside each signature line so that they could leave to attend to Mr. Canestri's health issues.

Ms. Tablan informed the Canestris that she intended to complete the forms after they had left,

and that she would mail them the completed copy.  After the Canestris left the pension office,

Ms. Tablan completed certain forms on behalf of the Canestris, inserting them into the packet of

pension documents in place of certain original forms.

　　　Among the set of blank documents signed by the Canestris, at the instruction of Ms.

Tablan, was the primary form affirmatively indicating whether the Joint and Survivor Annuity

Benefits were being waived, PTF 0013.  The form instructed the applicant to check one of five

benefits options.  Relevant here are option "A," "I DO NO WANT to be covered by the Joint and

---

[2] Defendant acknowledges that Plaintiff need not show deceptive intent on the part of the Trust Fund in order to establish a breach of its fiduciary duty.  See Ltr. from Def.'s counsel, June 30, 2010 (CM/ECF No. 94) (declining a request from this Court to submit a post-trial brief if Defendant contended that Plaintiff must demonstrate deceptive intent).

Survivor Annuity Benefit" and option "B," "I want to be covered by the Joint and Survivor

Annuity Benefit with my spouse.  I understand that there will be an actuarial reduction in the

retirement benefit based upon my age and the age of my spouse . . . ."  (Trial Ex. D-1, PTF

0013.)  The Court has found that none of the benefits options listed on PTF 0013 was selected by

the Canestris; they signed the form blank.   Although the Defendant has pointed to other

documents which may also support waiver, such as PTF 0024 which was also signed in a rush

with the second set of forms, it does not argue that a valid form PTF 0013 is not required to meet

the statutory requirements of waiver.  In fact, Mr. Ward testified that PTF 0013 governs the

election of benefits.  (Trial Tr. 338:3-5.)  Additionally, Defendant relies heavily on PTF 0013 and

the apparent check mark next to "I DO NO WANT to be covered by the Joint and Survivor

Annuity Benefit" in arguing that it has a facially valid waiver of benefits that should not be

questioned.

      Ms. Tablan not only had actual knowledge that the Canestris signed the blank, incomplete

pension forms, she instructed them to do so.  A waiver form signed in blank is not valid; by

itself, it does not manifest a knowing waiver of the right.  Here, this Court has found that Mr.

Canestri asked Ms. Tablan how much Mrs. Canestri's survivor benefits were going to be, and

that Ms. Tablan provided them with an amount.  Thus, Ms. Tablan had actual knowledge that the

waiver form, which she completed, was not a valid waiver by Plaintiff of the survivor benefits.

The Court also finds that Mr. Ward's failure to disclose to the Canestris the inconsistency in the

forms represents a material fact regarding the pension benefits which created a substantial

likelihood of misleading them as to the scope and terms of the benefits

      The fourth element of a breach of fiduciary claim "requires a showing of detrimental

reliance by the plaintiff." <u>See</u> <u>In re Unisys</u>, 579 F.3d at 229. "[D]etrimental reliance is not limited to the retirement decision alone; rather it may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." <u>Id.</u> Here, Plaintiff was well aware of her husband's declining health. The Canestris did not expect Mr. Canestri to live much longer. When the Canestris signed the blank pension application documents, they expected that they were electing a Joint and Survivor Annuity Benefit for Plaintiff. Only after Mr. Canestri's death did Plaintiff learn that the benefit had in fact been waived. The Canestris relied on Ms. Tablan's answers regarding the amount of pension benefit Plaintiff would receive. Additionally, by signing the blank forms at Ms. Tablan's direction, Plaintiff relied on Ms. Tablan's promise to execute the documents according to the Canestris' wishes. Therefore, the Court finds that Plaintiff has met her burden of establishing detrimental reliance on the acts of Ms. Tablan.

The Court likewise finds that Plaintiff detrimentally relied on the acts of Mr. Ward in his oversight role within the Trust Fund, having trusted the administrators of the plan to faithfully execute plan documents. Because the Canestris were never informed of any issue with the documents, they relied on them being correct and accurately reflecting the pension options selected.

"ERISA's statutory scheme is 'built around reliance on the face of written plan documents.'" <u>Kennedy</u>, 129 S.Ct at 875 (quoting <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 83 (1995)). Implicit in this scheme is a complementary reliance on ERISA plan fiduciaries to execute pension documents with appropriate "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). Without the dutiful execution of pension plan documents by trusted

fiduciaries, these documents cease to be reliable instruments upon which the parties, the administrators, and the courts can rely.  Thus, when parties are made to sign a blank pension documents, to be completed outside their presence and control, and the plan subsequently fails to detect and rectify inconsistencies in the documents, the pension plan has failed to exercise its duties with the level of care required of ERISA fiduciaries.  For these reasons, the Court holds that, based on clear and convincing evidence, Defendant breached its fiduciary duty to Plaintiff in the execution of the waiver.  The Court further holds that, because Defendant breached its fiduciary duty to Plaintiff, the waiver signed by Plaintiff will not be "treated as valid for purposes of discharging [Defendant] from liability to the extent of payments made pursuant to [ERISA]." 29 U.S.C. § 1055(c)(6).

The Court notes the very limited scope of this decision.  The decision that Defendant breached its duty to Plaintiff is based on Defendant's actions related to the two sets of documents, the answers given by Ms. Tablan to Mr. Canestri, and Mr. Ward's failure to detect and address the inconsistency in the forms; it is not based on Plaintiff's intent.  Here, the evidence submitted shows a unique set of facts.  This is not a case where the crux of the challenge to a facially valid waiver is simply that the plaintiff asserts that she did not mean to make the election.

### B.    Defendant's Motion for Partial Findings

At the close of Plaintiff's case, Defendant moved for a judgment of partial finding, arguing that Plaintiff had not established a breach of fiduciary duty because Ms. Tablan was not a fiduciary agent.  The Court reserved on this motion.  For the reasons discussed above, this Court rejects Defendant's argument regarding Ms. Tablan.  Therefore, Defendant's motion for

judgment of partial finding is denied as moot.

### C.     Remedy

Having found that Plaintiff's waiver of joint and survivor annuity benefits was invalid,

the Court now assesses what benefits are due to Plaintiff under the terms of the plan pursuant to §

1132(a)(1)(B).   Both parties stipulated that if Plaintiff "prevails in this action she would be

entitled to a monthly pension benefit in the amount of $2,604, from July 1, 2006, until the date of

her death, minus the overpayment in monthly benefits received by Carlo Canestri during his life

in the amount of $13,464."  (Stip. Facts. ¶ 63.)   Given the intent of the Canestris in executing the

pension plan application and the current agreement of the parties with regard to an appropriate

remedy, the Court finds that the stipulated remedy is reasonable and within its equitable

discretion to provide pursuant to § 1132(a)(1)(B).  Having awarded Plaintiff a fair recovery of

benefits, the Court sees "no need for further equitable relief" to be awarded.  See Varity Corp.,

516 U.S. at 515.

Finally, Plaintiff's request for attorney fees and costs under 29 U.S.C. § 1132(g) is

denied.  Section 1132(g)(1) gives courts discretion to award attorney fees in cases brought by

participants.  A district court must consider five policy factors "in determining whether to award

fees: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to

satisfy an award of attorney[s]' fees; (3) the deterrent effect of an award of attorneys' fees; (4) the

benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the

parties' positions."  Fields v. Thompson Printing Co., 363 F.3d 259, 275 (3d Cir. 2004).  The

Court has not found that Defendant acted in bad faith.  For this reason and given the unique set of

facts of this case, the Court also finds that an award of attorney fees will not have a deterrent

effect on Defendant.  The breach here occurred not by design.  To the extent that greater care should have been taken with respect to Mr. Canestri's pension application, the award of benefits will provide sufficient incentive to Defendant to correct such errors in the future.  Also, although the Court found in favor of Plaintiff, it recognized the general rule respecting the validity of a facially conforming waiver.  It was reasonable given the document in the file for Defendant to contest the action.  At the end of the day, the evidence supported Plaintiff's claims, but both sides' arguments had merit.  No benefit to members of the plan of awarding fees has been demonstrated.  Thus, this Court finds that the only factor weighing in favor of the award of fees is Defendant's ability to pay the fees.  This factor is insufficient to outweigh the other factors.

III.    CONCLUSION

For the reasons stated above, the Court will enter judgment in favor of Plaintiff.  An appropriate Order and Judgment accompany this Opinion.

Dated: October 22, 2010                              /s/ Jose L. Linares_____
                                                     United States District Judge